UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
PELEGE FAUSTIN,                        :
                                       :
                         Plaintiff,    :    23cv8323 (DLC)
                                       :
            -v-                        :    OPINION AND
                                       :    ORDER
THE NEW YORK AND PRESBYTERIAN          :
HOSPITAL, et al.,                      :
                                       :
                        Defendants.    :
                                       :
-------------------------------------- X

APPEARANCES:

For plaintiff Pelege Faustin:
Anne Donnelly Bush
Law Offices of Anne Donnelly Bush
43 West 43rd Street, Suite 117
New York, NY 10036

For defendants The New York and Presbyterian Hospital and Miguel
Artache, Individually:
Courtney Sophie Stieber
Kyle Donald Winnick
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018

DENISE COTE, District Judge:

    Pelege Faustin, an employee of The New York and
Presbyterian Hospital ("NYP"), has sued NYP and a supervisor for
employment discrimination and retaliation.  Following the
completion of discovery, the defendants have moved for summary
judgment on each of Faustin's claims.  For the following
reasons, the motion is granted.

## Background

The following facts are taken from the evidence submitted in connection with the defendants' summary judgment motion. Only those facts necessary to decide this motion are stated. The facts are undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted.

In brief, Faustin complains that he was not promoted to two positions for which he had applied. He further asserts that after he filed a charge with the Equal Employment Opportunity Commission ("EEOC") over that failure to promote him, which he considered discriminatory, NYP retaliated against him on two occasions by unfairly disciplining him.

Faustin identifies as Black and was born in Haiti in 1965. He moved to the United States in 1986 and became a naturalized citizen in 1996. That same year, Faustin graduated from the New Jersey Institute of Technology with a degree in Electrical Engineering Technology and began working at NYP as a Biomedical Technician I. His employment at NYP is pursuant to the terms of a collective-bargaining agreement.

Between 1998 and 2013, Faustin was promoted from Biomedical Technician I, to Biomedical Technician II, and later to Biomedical Technician III. In July 2013, Faustin was promoted

to Lead Biomedical Technician ("Lead").  Faustin remains in that role today.

A Lead is a non-supervisory position.  Faustin has never hired or fired another employee, interviewed potential hires, assessed the performance of another employee, given a corrective action to another employee, overseen or prepared a budget or the purchase of equipment, or managed institutional service contracts or budgets.  He declares, however, that between 2013 and 2018, part of his job as Lead was to set a schedule for the evening shift, train new evening shift team members, and "report" to the site manager "what was going on."

Defendant Miguel Artache has been the Director of Biomedical Engineering for NYP's West Sphere, which includes several hospital campuses, since November 2020.  In this position, Artache supervises one Biomedical Supervisor and four CE Managers.  CE Managers, in turn, supervise the Biomedical Technicians, grades I, II, III, and Lead.

I.   Columbia CE Manager Vacancies

In early 2022, NYP needed to fill two vacancies for CE Manager positions at its Columbia campus (the "Columbia Vacancies").  On January 30, 2022, NYP created a job vacancy for a CE Manager position, which was given a unique identifier (the "First Columbia Vacancy").  On March 28, 2022, NYP created

3

another job vacancy for a CE Manager position, which was given
another unique identifier (the "Second Columbia Vacancy").
Artache was the hiring manager for the Columbia Vacancies.  Both
positions had the same job description.  This included a
preference for strong leadership skills and five years of
management experience.  The job description explained that CE
Managers are responsible for purchasing and requisition of
equipment, as well as pre-purchase evaluations, overseeing
institution-wide service contracts, preparing and monitoring
operating budgets, and hiring, training, and evaluating assigned
staff.

Columbia advertised the First Columbia Vacancy in January
2022 and Faustin applied for it on February 9.  Columbia
considered all those who applied for the First Columbia Vacancy
for the Second as well.

NYP received more than 50 applications for the Columbia
Vacancies and, between March 17 and July 14, interviewed ten
candidates.  NYP did not interview Faustin.  Among those
interviewed, several are current NYP employees and have provided
NYP with self-reported racial data: one self-identifies in NYP's
internal system as Black, one as Asian, one as half-Asian and
half-Hispanic, one as Hispanic, and one as "two or more races."

On April 15, 2022, Artache made an offer to Jamel "Melquan" Graves, who the parties agree is Black, to fill one of the vacancies. Artache declares that he decided to interview Graves after determining that his resume included the type of managerial experience Artache sought for prospective CE Managers -- specifically, serving in what Artache understood to be a managerial position in which Graves operated a budget of $900,000. Graves also impressed Artache in his interview. Graves, however, never responded to the job offer.

Accordingly, on April 22, Artache made a job offer to Raymond Santana, who self-identifies as half-Asian and half-Hispanic. According to Santana's resume, he holds a Bachelor of Science in Biomedical Engineering Technology and worked as a Biomedical Engineer I at Memorial Sloan Kettering Hospital ("MSK"), where he managed "workflow enhancement and optimization" and "recalls" of hospital equipment, and coordinated with outside vendors about equipment remediation plans. Artache concluded that Santana's work experience would prepare him for the role and was impressed by Santana's interview and references. Santana accepted Artache's offer on the same day it was made.

On July 14, 2022, Artache interviewed Richard Orellana, who self-identifies as Hispanic. Orellana holds a Master of

5

Engineering Management and most recently worked as a "Senior Biomedical Technician" at MSK.  His resume details Orellana's experience managing the requisition of equipment parts, overseeing planned equipment maintenance, and preparing proposals for the purchase of new equipment.  After checking his references, Artache offered Orellana the remaining CE Manager position, which he accepted.

II.  EEOC Charge

Faustin filed a charge of employment discrimination with the EEOC on March 2, 2023.  He asserted that NYP had discriminated against him on the basis of race, color, national origin, and age because Artache hired two individuals of the "same ethnic background" as Artache and did not interview Faustin.

III. June 2023 Corrective Action

In June of 2023 Faustin was disciplined for his actions on April 25.  On April 25, in response to a request from a Respiratory Therapist, Faustin was assigned to fix a Bernoulli device -- a clinical device that monitors ventilated patients -- that was not working correctly.  Faustin asserts that he told the Respiratory Therapist the problem was due to the wrong equipment being assigned "in the Bernoulli System," which Faustin asserts was not his responsibility to change.  Faustin

6

completed the work order, marking it as "Solved" and writing in
a comment that he "[t]roubleshot the issue, [i]dentified the
problem, fixed it, checked ok."

In fact, the device was not functioning properly and had
not been fixed.  The Clinical Coordinator for the Respiratory
Care Department sent an e-mail reporting that Faustin had said
that the Bernoulli device issue "was not his problem," and that
Faustin did not attempt to troubleshoot the device.  The email
indicated that the Respiratory Therapist had placed a second
work order to have someone check the device.  A supervisor and a
Biomedical Technician III responded to the second work order and
fixed the device.

Faustin's conduct was referred to NYP's Office of Corporate
Compliance ("OCC"), which investigates internal patient-safety
issues.  OCC interviewed Faustin and the Respiratory Therapist,
and reviewed the work order completed by Faustin on April 25.

OCC's investigation determined that Faustin was at fault.
A Compliance Manager with the OCC concluded that Faustin "did
not make an attempt to physically troubleshoot the Bernoulli
device in the manner his service notes claimed he had done," and
that there was sufficient evidence to prove that Faustin had
"falsified a business record."  The Compliance Manager added
that Faustin had "admitted that his service note" was not

7

sufficiently detailed.  The Compliance Manager also found that
Faustin's words and actions towards the Respiratory Technician
violated the NYP Credo and Employee Code of Conduct.  On June 1,
the Biomedical Department suspended Faustin two days without
pay.

Faustin's union grieved the suspension on June 1.  A
hearing was held on February 14, 2024.  On March 7, the Hearing
Officer denied the grievance, determining that Faustin's
"conduct on the day in question was serious and cannot be
tolerated."  The Hearing Officer's decision observes,
nevertheless, that NYP had agreed to restore one day of lost
wages to Faustin, and that if Faustin was not issued any
additional corrective action within six months, the suspension
would be reduced further to a written warning.  The union
refused to appeal and, in September 2024, the suspension was
reduced to a written warning.

IV.  December 2024 Corrective Action

In November 2024, Biomedical Technicians on the morning
shift complained that Biomedical Technicians on the evening and
night shifts were not completing work orders, which the morning
shift then had to complete.  An audit revealed that three
Biomedical Technicians -- Faustin, Rehman Syed, and Mark
Chernoguz -- were assigned work orders in October and November

2024 but did not complete them.  NYP issued corrective actions
to all three individuals.  Because Faustin had a past corrective
action, the next step under NYP's progressive discipline was
suspension.  Accordingly, on December 19, 2024, Faustin was
issued a one-day suspension.  Syed and Chernoguz had no previous
corrective actions and they received warnings.

V.   Procedural History

Faustin initiated this action on September 20, 2023.  He
filed the FAC on December 5.  The FAC asserts claims for race
discrimination under 42 U.S.C. § 1981; for race and national
origin discrimination under Title VII of the Civil Rights Act of
1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; for age
discrimination under the Age Discrimination in Employment Act of
1967("ADEA"), 29 U.S.C. § 621 et seq.; and for race, national
origin, and age discrimination under both the New York State
Human Rights Law ("NYSHRL"), N.Y. Exec. Law. § 290 et seq., and
the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin.
Code § 8-101 et seq.  It additionally asserts retaliation claims
under each of these federal, state, and local laws.

Fact discovery closed on January 31, 2025.  On February 21,
defendants moved for summary judgment on all claims asserted
against them.  In opposing the motion, Faustin abandoned his

claims for race and age discrimination.  The motion became fully submitted on March 28, 2025.

## Discussion

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those facts that "might affect the outcome of the suit under the governing law."  Choi v. Tower Rsch. Cap., LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).  "[S]ummary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Indemn. Ins. Co. of N. Am. v. Unitrans Int'l Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted).

"The court's role with respect to such a motion is not to resolve disputed questions of fact but solely to determine whether, as to any material fact, there is a genuine issue to be tried."  Moll v. Telesector Res. Grp., Inc., 94 F.4th 218, 227 (2d Cir. 2024) (citation omitted).  The court must "review the record taken as a whole," and "may not make credibility determinations or weigh the evidence."  Id. (citation omitted).  Nonetheless, summary judgment is proper when the non-moving

party "has failed to make a sufficient showing on an essential element."  Id. at 228 (citation omitted).

I.   Statute of Limitations

The defendants move to dismiss Faustin's failure-to-promote claim under Title VII for being untimely with respect to the First Columbia Vacancy.  The motion is granted.

Under Title VII, plaintiffs must file a charge with the EEOC "within 180 days or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred."  King v. Aramark Servs. Inc., 96 F.4th 546, 559 (2d Cir. 2024) (citation omitted).  Generally, each discrete discriminatory or retaliatory act violating federal law "gives rise to a freestanding [federal] claim with its own filing deadline."  Chin v. Port Auth. Of N.Y. & N.J., 685 F.3d 135, 157 (2d Cir. 2012) (citation omitted).  Accordingly, where a plaintiff's claims are premised on "discrete discriminatory or retaliatory acts" such as the "failure to promote," those claims may be barred by the statute of limitations "if they occurred prior to the 300-day period even though they may be related to acts that occurred within the permissible 300-day period."  Davis-Garett v. Urb. Outfitters, Inc., 921 F.3d 30, 42

(2d Cir. 2019) (quoting <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113-14 (2002)).

Faustin filed his EEOC charge on March 2, 2023.  Therefore, any claims under Title VII arising from acts that occurred before May 6, 2022 -- 300 days before he filed his complaint with the EEOC -- are untimely.  Because Santana accepted the job offer for the First Columbia Vacancy on April 22, 2022, Faustin's claim for employment discrimination related to that position is time barred.

Faustin contends that his failure-to-promote claim regarding the First Columbia Vacancy should be considered timely under the continuing violations doctrine.  It is well established, however, that "every failure to promote is a discrete act that potentially gives rise to a freestanding Title VII claim with its own filing deadline."  <u>Chin</u>, 685 F.3d at 157. The continuing violation doctrine is therefore not applicable to Faustin's failure-to-promote claims under Title VII.

II.  National Origin Discrimination

The defendants move to dismiss Faustin's two failure-to-promote claims regarding the Columbia Vacancies brought under

Title VII, the NYSHRL, and the NYCHRL on the merits.[1]  Their
motion is granted.

 For a claim of national origin discrimination under Title
VII, the NYSHRL, and the NYCHRL, courts apply the burden-
shifting framework set forth by the Supreme Court in <u>McDonnell
Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Garcia v.
Hartford Police Dep't</u>, 706 F.3d 120, 127 (2d Cir. 2013).  At the
first stage of the <u>McDonnell Douglas</u> framework, the plaintiff
bears the burden of establishing a <u>prima facie</u> case of
discrimination by showing that "(1) she is a member of a
protected class; (2) she is qualified for her position; (3) she
suffered an adverse employment action; and (4) the circumstances
give rise to an inference of discrimination."  <u>Bart v. Golub
Corp.</u>, 96 F.4th 566, 570 (2d Cir. 2024) (citation omitted).  A
plaintiff may establish an inference of discrimination through
various kinds of evidence, including "the more favorable
treatment of employees not in the protected group."  <u>Littlejohn
v. City of New York</u>, 795 F.3d 297, 312 (2d Cir. 2015) (citation
omitted).

---

[1] Faustin has abandoned any claim that the defendants should also
have appointed him to a CE Manager position in June 2023 in the
Biomedical Department of Westchester Hospital.  This issue is
only briefly mentioned in the FAC and Faustin's opposition to
this motion does not seek to preserve it.

Once the plaintiff has established a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for its adverse action." Bart, 96 F.4th at 570 (citation omitted).  If the defendant makes such a showing, "the burden then shifts back to the plaintiff to prove that the employer's stated reason was pretext for discrimination." Id.

At this third stage, the plaintiff is "not required to demonstrate the falsity of the employer's proffered reason," but can instead prove "that an impermissible factor was a motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation." Id. (citation omitted) (emphasis in original).  Differently put, the burden shifts back to the plaintiff to produce "other evidence indicating that the employer's adverse action was motivated at least in part by the plaintiff's membership in a protected class." Id. at 576.

The NYCHRL and NYSHRL are construed more liberally than their federal counterpart, Title VII, and require an independent analysis of a plaintiff's discrimination claims.  See Qorrolli v. Metro. Dental Assocs., 124 F.4th 115, 122-23 (2d Cir. 2024). Nevertheless, to survive summary judgment under the NYCHRL and the now amended NYSHRL, a plaintiff must establish that the

14

adverse employment action was "caused at least in part by
discriminatory or retaliatory motives." Mihalik, 715 F.3d at
113; see also id. at 110 n.8.

In the failure-to-promote context, a plaintiff who relies
exclusively on her supposedly superior qualifications for the
job as circumstantial evidence of discrimination must produce
evidence to support that inference. She must present evidence
that her credentials were "so superior to the credentials of the
person selected for the job that no reasonable person, in the
exercise of impartial judgment, could have chosen the candidate
selected over the plaintiff for the job in question." Walsh v.
New York City Hous. Auth., 828 F.3d 70, 78 (2d Cir. 2016)
(citation omitted). Where a plaintiff's qualifications are not
"so superior," a discrepancy may still have probative value.
Id.

Assuming that Faustin has established a prima facie case of
discrimination, he fails to rebut NYP's nondiscriminatory reason
for not promoting him. The defendants have presented unrebutted
evidence that Graves, Santana, and Orellana were offered the
Columbia Vacancies based on the strength of their resumes,
interviews, and references, which demonstrated that they had
experience managing others, overseeing contracts and budgets,

and purchasing equipment that the plaintiff did not.[2]  Faustin
has failed to produce evidence from which a jury could conclude
that he had superior qualifications or that the defendants'
decision not to hire him "was motivated at least in part" by his
national origin.  Bart, 96 F.4th at 576.

In opposition to this motion, Faustin asserts in conclusory
terms only that he was better qualified than Santana and
Orellana for the two CE Manager positions.  He fails entirely to
grapple with the record of their qualifications and the
superiority of those qualifications to his own.  Instead,
Faustin seeks to raise a question of fact with four other
arguments.

First, Faustin argues that national origin discrimination
can be inferred from the fact that Artache, who is Hispanic,
hired two Hispanic individuals for the CE Manager positions.
There are several problems with this argument.  The most
significant is that, on paper alone, Santana and Orellana were

---

[2] Faustin suggests that the Court should disregard a declaration
from Artache regarding his reasons for offering the Columbia
Vacancies to Graves, Orellana, and Santana because, quoting
Reeves v. Sanderson Plumbing Prods., Inc., Artache is an
"[]interested witness."  530 U.S. 133, 151 (2000).  It is
entirely proper to consider Artache's evidence when evaluating
whether the defendants have offered admissible evidence
"sufficient for the trier of fact to conclude" that the failure
to promote was done for a nondiscriminatory reason.  Id. at 142.

better qualified for the job for which they applied than the plaintiff.  In such circumstances, the shared ethnicity does not create an inference of discrimination.  Moreover, the first person to whom Artache offered the job was not Hispanic, but Black.

Next, Faustin argues that the defendants were required to give priority to internal candidates under NYP's own policies. NYP policies require its staff to review the applications of internal candidates first; they do not require internal candidates to be hired in lieu of superior external candidates. Faustin has failed to provide evidence of even a minor departure by NYP from its established hiring practices.  See Carr v. New York City Transit Auth., 76 F.4th 172, 177-78 (2d Cir. 2023).

Faustin also complains that it was discriminatory to not interview him for the CE Manager positions, especially considering that the defendants interviewed another Lead, Silvio Balayon.  Without evidence that he was better qualified than those NYP hired, however, the fact that he was not among the ten interviewed has no significance.  Moreover, it is not disputed that Balayon had more seniority and had received better performance evaluations than Faustin.

Finally, Faustin asserts that his immediate supervisor gave him a lower performance review for the year 2022 ("Meets

Expectations") than in earlier years.  Faustin speculates that
this review may have doomed his chances for an interview, and
that the disappointing performance review was given to "re-cast"
Faustin's job performance "in the worst light possible."
Faustin has not shown that his supervisor was discriminating
against him when he gave that review.  In any event, even
without considering that review, those NYP hired for the CE
Manager positions had superior qualifications.  Accordingly,
this single Meets Expectations review by his supervisor does not
create an issue of fact regarding NYP's motivations in failing
to promote Faustin to the Columbia Vacancies.

III. Retaliation

Finally, Faustin brings claims for retaliation under Title
VII, the NYSHRL, and the NYCHRL.  He asserts that the defendants
retaliated against him in June 2023 and December 2024 for his
filing of the EEOC charge on March 2, 2023.  The defendants move
to dismiss each of these claims.  Their motion is granted.

Title VII "prohibits an employer from discriminating
against an employee because the employee has engaged in
protected activity."  Banks v. Gen. Motors, LLC, 81 F.4th 242,
275 (2d Cir. 2023).  State and city law likewise prohibit
employers from retaliating against employees for opposing
unlawful discrimination.  N.Y. Exec. Law § 296(7); N.Y.C. Admin.

18

Code § 8-107(7).  Federal, state, and city retaliation claims

are subject to the McDonnell Douglas burden-shifting framework

already described.  Knox v. CRC Mgmt. Co., LLC, 134 F.4th 39, 49

(2d Cir. 2025).

To establish a prima facie claim for retaliation under

Title VII, a plaintiff must demonstrate four elements:

> (1) an adverse employment action; (2) participation in
> a protected activity; (3) that the defendant knew of
> the protected activity; and (4) a causal connection
> between the protected activity and the adverse
> employment action.

Edelman v. NYU Langone Health Sys., No. 24-251, 2025 WL 1699582,

at *8 (2d Cir. June 18, 2025) (citation omitted).  Under Title

VII, a plaintiff must establish that "the retaliation was a

'but-for' cause of the employer's adverse action."  Qorrolli v.

Metro. Dental Assocs., D.D.S., 124 F.4th 115, 122 (2d Cir. 2024)

(citation omitted).  In many cases, a plaintiff may clear that

hurdle "by showing that the protected activity was closely

followed in time by the adverse employment action."  Zann Kwan

v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013) (citation

omitted).  If the employer can then articulate

> a non-discriminatory basis for the adverse employment
> action, the burden shifts back to the plaintiff to
> show either that the defendant's reasons were
> pretextual, or that the defendant's stated reasons
> were not its sole basis for taking action, and that
> its conduct was based at least in part on
> discrimination.

19

Edelman, 2025 WL 1699582, at *9 (citation omitted).

A plaintiff's burdens are somewhat less stringent under state and city law. Under the NYCHRL and NYSHRL, a plaintiff claiming retaliation must establish "that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Qorrolli, 124 F.4th at 122 (citation omitted). Moreover, a plaintiff must establish that her protected activity was a motivating factor behind the defendant's retaliatory action, not a but-for cause. See Mihalik, 715 F.3d at 113; Lively v. Wafra Inv. Advisory Grp., Inc., 180 N.Y.S.3d 92, 94 (1st Dep't 2022).

A.    June 2023 Suspension

Faustin filed his EEOC charge, protesting the defendants' failure to promote him, in March of 2023. The defendants do not dispute that this constitutes protected activity. They assert, however, that Faustin has failed to offer evidence to raise a question of fact that their decisions to discipline Faustin were motivated by retaliation. They are correct.

In April of 2023, Faustin responded to a request to fix a Bernoulli device. An investigation found that Faustin had falsified a business record in completing his work order and that he had violated NYP's Code of Conduct in his interactions

20

with the Respiratory Therapist.  A Hearing Officer denied
Faustin's grievance.  NYP ultimately reduced Faustin's two-day
suspension to a written warning.

Faustin principally relies on the temporal proximity
between his March 2023 EEOC charge and the June 2023 suspension
to show a retaliatory motive.  But temporal proximity alone,
while sufficient to propel a plaintiff past the prima facie
stage, is insufficient to establish retaliatory intent.  Bentley
v. AutoZoners, LLC, 935 F.3d 76, 90 (2d Cir. 2019).  Further
eliminating any causal connection is the undisputed fact that
neither the Respiratory Therapist nor her supervisor who
complained about Faustin's failure to address the problem with
the Bernoulli device had knowledge of Faustin's protected
activity.  Cf. Collins v. New York City Transit Auth., 305 F.3d
113, 115 (2d Cir. 2002); see also Ruiz v. Cnty. of Rockland, 609
F.3d 486, 494 (2d Cir. 2010).

Faustin argues that the decision to suspend him was
pretextual because the Corrective Action Form documenting his
suspension references a past corrective action that never
occurred.  It reports that Faustin had received a verbal warning
on "1/19/23," which Faustin asserts did not happen.[3]  But whether

---

[3] The defendants have produced a document that memorializes a
verbal warning that Faustin received in January 2023, albeit one
dated January 4, not January 19.

21

or not the Form was accurate in referring to a January 2023
verbal warning is neither here nor there.  The critical issue
for Faustin's claim is how he responded to the work order to fix
the Bernoulli device and whether NYP disciplined him for that
response or to retaliate against him.  Faustin has failed to
produce evidence of a retaliatory motive by NYP in disciplining
Faustin for his response.[4]  Faustin has adduced no evidence to
show that NYP did not treat him fairly and proportionally when
it suspended him for two days for conduct that an independent
Hearing Officer deemed "serious" and intolerable.

Finally, Faustin contends that the Respiratory Therapist
lied in describing Faustin's response to the Therapist.  Faustin
contends that he did not "refuse" to fix the problem with the
Bernoulli device, which was not showing the vital signs of a
ventilated patient.  This disagreement with the Therapist's
veracity, however, does not suggest a retaliatory motive by NYP.
Faustin does not dispute that the Therapist complained about
him, that a second work order was issued; that others fixed the
device, and that a Compliance Manager reported that Faustin had

---

[4] Moreover, Faustin has not even shown that the Form's reference
to the prior verbal warning had any effect on the degree of
discipline imposed on Faustin.  Whether or not Faustin had
received a warning in January, NYP's policies permit it to
depart from its progressive discipline structure where an
individual occurrence merits more serious and swift discipline.

"admitted his service not was not in accordance with" applicable guidelines. Nor does he dispute that his grievance was denied by an independent Hearing Officer. NYP could reasonably rely on the outcome of an independent investigation and then the hearing in reaching its decision. Faustin has thus failed to establish that NYP's reason for disciplining him in June 2023 was pretextual.

B.   December 2024 Suspension

Faustin has also failed to present evidence that NYP retaliated against him when it disciplined him in late 2024. In November 2024, morning shift Technicians complained about work orders left unaddressed by those working overnight. An audit identified Faustin and two others as those responsible, and in December, NYP suspended Faustin for a day.[5] Faustin cannot demonstrate a causal connection between this imposition of discipline and his EEOC charge for several reasons.

First, there is no temporal connection. His suspension occurred approximately 21 months after he filed his EEOC charge in March 2023. While there is no "bright line" rule defining "the outer limits beyond which a temporal relationship is too

---

[5] Faustin has presented no evidence demonstrating that Artache played any role in the December 2024 suspension. The retaliation claim against Artache as to the December 2024 suspension is thus dismissed for this independent reason.

attenuated to establish causation," the period of time here is well past the periods of "four" or "eight" months that have been held to "demonstrate a causal connection between the protected activity and the alleged adverse action." Banks, 81 F.4th at 277 (citation omitted).

Moreover, it is undisputed that it was a complaint from the morning shift Technicians that began the investigation. There is no suggestion that they knew who on the evening shift was at fault, knew about the EEOC complaint, or had any animus against Faustin.

Finally, NYP also disciplined two other employees following its audit. This further eliminates any inference that NYP's December 2024 discipline of Faustin was retaliatory.

Faustin's effort to raise a question of fact regarding NYP's motivation in disciplining him fails. Faustin seeks to do so by disputing the accuracy of the audit, providing explanations for why he did not complete the work assigned to him. For instance, Faustin declares that he was "not aware" that the relevant work orders were assigned to him or that management failed to properly communicate the assignments.[6]

---

[6] The Corrective Action Form detailing the December 2024 suspension explains that Faustin failed to complete six work orders assigned to him between November 8 and November 18. NYP has produced electronic audit trails for four of these work orders, which demonstrate for each that the work order was

24

Faustin's explanations for his failure to respond to each work
order, however, do not raise an inference of retaliation.  He
does not deny that in each instance the audit trail led to him.
And more significantly, for the reasons just explained, these
disputes over the individual work orders do not create a
material issue of fact as to whether NYP's motivation in
disciplining Faustin was retaliatory.  Too much time had passed
to link the discipline to an EEOC filing many months earlier;
the audit was initiated by staff on NYP's morning shift; and the
audit resulted in adverse findings against three employees, not
just Faustin.

Finally, Faustin argues that he suffered a pattern of
retaliation in the six months after he filed his EEOC complaint.
He contends that he was wrongly accused during that period of
time of failing to respond to work orders.  There are several
deficiencies with this argument; it is only necessary to
describe two.  When deposed, Faustin did not identify adverse
actions other than the June 2023 and December 2024 suspensions,
which have already been discussed.  Faustin may not create an
issue of fact by submitting an affidavit in opposition to a
summary judgment motion that contradicts his deposition

---

assigned to Faustin but that morning shift workers, not Faustin,
completed the assignment.

testimony.  <u>Brandon v. Kinter</u>, 938 F.3d 21, 34 n.9 (2d Cir. 2019).  Second, the instances to which he alludes, did not result in any discipline and did not occur within six months of the filing of his EEOC complaint, but approximately 20 months later.[7]

## Conclusion

The defendants' February 21, 2025 motion for summary judgment is granted.  The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:    New York, New York
          June 25, 2025

DENISE COTE
United States District Judge

---

[7]  The accusations were made in October and November of 2024.